UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAZZ JAMEL GILDS | * | CIVIL ACTION |
| VERSUS | * | NO. 21-1737 |
| JEFFERSON PARISH SHERIFF'S DEPARTMENT | * | SECTION "I" (2) |

**REPORT AND RECOMMENDATION**

This is a civil action brought by Plaintiff Jazz Jamel Gilds ("Gilds") under 42 U.S.C. § 1983 against the Jefferson Parish Sheriff's Department. ECF No. 4-1. Plaintiff is a prisoner currently incarcerated in Jefferson Parish Correctional Center in Gretna, Louisiana. He filed this § 1983 complaint *pro se* and *in forma pauperis* alleging excessive force. *Id.* ¶¶ IV, V, at 4-6. Plaintiff seeks monetary compensation. *Id.* ¶ V, at 6. This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. LR 73.2(A).

**I.    BACKGROUND**

    **A.    Factual Allegations**

Plaintiff Jazz Jamel Gilds, a pretrial detainee in the Jefferson Parish Correctional Center, filed this complaint *pro se* and *in forma pauperis* against the Jefferson Parish Sheriff's Office ("JPSO") alleging that a JPSO officer fired his weapon at Plaintiff immediately as he stepped out of his vehicle preceding his arrest. ECF No. 4-1, ¶ III (A)(4), at 4; ¶ IV, at 5. Officer Bradley Scott, Officer Brian Duffourc, Deputy Anthony Ligso and unidentified Officer #115456 were added via amendment. ECF No. 12. Plaintiff seeks monetary damages for use of excessive force. *Id.* ¶ V, at 6.

In response to this Court's § 1983 Facts Order, Plaintiff asserts that Officer Bradley Scott, Officer Brian Duffourc, Deputy Anthony Lisgo and one unidentified officer (Officer #115456) violated his constitutional rights. ECF No. 8, ¶ 1, at 1. He confirms that he is a pretrial detainee filing suit based on events occurring during his arrest. ECF No. 8, at 1. Specifically, Plaintiff states that JPSO Deputy Lisgo immediately began to fire upon him when he exited his vehicle after a car accident, and in fear for his life, he began to run through the neighborhood. *Id*. Plaintiff asserts that "they" claimed he had a firearm in his hand when he did not; no weapons were found on him and police report G-18594-21 does not indicate that he was in possession of a firearm nor were any firearms found at the scene. *Id*. JSPO Officer Duffourc was the reporting officer. *Id*.

Plaintiff was arrested on July 24, 2021 and charged with four crimes: La. Rev. Stat. § 14:34 (aggravated battery); La. Rev. Stat. § 14:37.4 (aggravated assault with a firearm); and La. Rev. Stat. § 14:67.26(C)(3) (motor vehicle theft).; and La. Rev. Stat. § 14:37.4 (aggravated assault with firearm). ECF No. 8-1, at 1. The report indicates that the victim reported that Plaintiff struck him several times in the head and face with a handgun, stole his vehicle, and threatened to shoot another victim. *Id*. at 3. While in the course of taking the victim's statement, the victim saw the stolen vehicle across the roadway and advised the officers. *Id.* at 4. One of the officers requested that dispatch broadcast the vehicle's description and location, after which Deputy Lisgo observed the vehicle and began to follow it. *Id*.. Officer Lisgo advised that, after the vehicle crashed into multiple vehicles, the driver fled the location and began to jump fences and run through several yards. *Id*.

While in jail, Plaintiff was stabbed in the skull and groin during a fight, which required that he be taken to the hospital for sutures. ECF No. 8, ¶ 3, at 2. On July 29, 2021, other JPSO Officers interviewed Plaintiff upon his return to JPCC after which a supplemental police report was issued

to include charges of hit and run, reckless driving, and driving without a license. *Id*. ¶ 5, at 2; *see also* ECF No. 8-2. Based on outstanding warrants, Plaintiff was also booked and charged with the following:

> La. Rev. Stat. § 14:34.91 (Battery of a Darting Partner) (ltem Cl877l2l)
> La. Rev. Stat. § 14:67 B (4) (Theft/Misappropriation without Violence) (Item C-18771-21)
> La. Rev. Stat. § 14:38 (Simple Assault) (Item J-l1230-20)
> La. Rev. Stat. § 14:338 (Interfering Emergency Communication) (Item Jl 123020)
> La. Rev. Stat. § 14:568(l) (Simple Criminal Damage to property) (Item Jl 123020)
> La. Rev. Stat. § 14:34.91 (Aggravated Assault upon a Dating Partner) (Item Jl123020)
> La. Rev. Stat. § l4:34 (Aggravated Battery) (Item G-18594-21)
> La. Rev. Stat. § 14:35 (Simple Battery) (Iltem G-l8594-21)
> La. Rev. Stat. § l4:69.l (Illegal Possession of a Stolen Firearm) (Item G-18594-21)
> La. Rev. Stat. § l4:95.1 (Convict Felon with a Weapon) Item G-l8594-21)
> La. Rev. Stat. § 14:108.1 (Flight from an Officer) (Item GI859421)
> La. Rev. Stat. § 40:966 C/02- (F/PWIT) (Item G-18594-211)

ECF No. 8, ¶ 6, at 2–3. Before his scheduled hearing on October 21, 2021, the Jefferson Parish District Attorney filed a Bill of Information charging Plaintiff with violations of:

> La. Rev. Stat. § 14:95.1 (felon in possession of firearm (Ruger Model P94));
> La. Rev. Stat. § 14:95.1 (felon in possession of firearm (Anderson Model AM-15));
> La. Rev. Stat. § 14:108.1(C) (aggravated flight from officer); and
> La. Rev. Stat. § 14:69.1 (possession of stolen firearm).

ECF No. 8-4, at 2. By Supplemental Bill of Information dated November 9, 2021, the Jefferson Parish District Attorney added count five alleging violation of La. Rev. Stat. § 14:37.2 (aggravated assault upon a peace officer). *Id*. at 4. After identifying various complaints with the police reports regarding the absence of any indication of weapons and other disputes of the factual statements contained in the reports (ECF No. 8, ¶¶ 12–23, at 4–6), Plaintiff asserts that JPSO Deputy Lisgo used excessive force in violation of his constitutional rights. *Id*. at 6–7.

**B.**   ***Spears* Hearing Testimony**

On March 28, 2022, I conducted a telephone conference in this matter. Participating was Plaintiff proceeding *pro se*. Plaintiff was sworn and testified for all purposes permitted by *Spears*

3

*v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.

Gilds confirmed many of the details above during his *Spears* testimony. He explained that he is not suing about any conditions of incarceration, but rather, issues surrounding his arrest, specifically excessive force (via one gunshot) in violation of his Fourth Amendment rights. He confirmed that he named only Jefferson Parish Sheriff's Department because he did not have Deputy Lisgo's name at the time he filed his Complaint.

Plaintiff testified that Officer Scott did not shoot at him nor was he involved in his arrest, but thinks he is the officer who wrote the police report. Plaintiff stated that he named Officer Duffourc because his name was on the police report. He confirmed that Officer Duffourc did not shoot at him nor was he involved in the arrest. Plaintiff identified Deputy Lisgo as the officer who fired his weapon one time as soon as Plaintiff jumped out of the car and then ran. The K-9 crew then retrieved Plaintiff, and he was arrested by other officers. He is not claiming excessive force for any basis other than the shot fired against him.

The criminal matters have not proceeded to trial. Plaintiff indicated some charges have been dropped, but he believed that all charges were dropped other than one count of possession of a stolen firearm, two counts of being a felon in possession of a firearm, and one count of aggravated flight from an officer. Plaintiff contends that the charges against him are false, no gun was found nor mentioned in any report, he did not have a gun in his hand, and he should not be charged with a crime involving a weapon.

## II.   LEGAL STANDARDS

### A. Statutorily Required Screening

A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing.[1] Complaints by prisoners must be dismissed upon review if they are frivolous and/or fail to state a claim.[2] The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[3]

"A federal court may dismiss a claim *in forma pauperis* 'if satisfied that the action is frivolous or malicious.'"[4] A claim is frivolous if it "lacks an arguable basis in law or fact."[5] A claim lacks an arguable basis in law if it is "'based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[6] A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[7] A court may not dismiss a claim simply because the facts are "unlikely."[8]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in

---

[1] 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).
[2] 28 U.S.C. § 1915A(b)(1); *see also* 28 U.S.C. § 1915(e)(2)(B).
[3] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[4] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citation omitted); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias*, 23 F.3d at 97 (quoting *Neitzke*, 490 U.S. at 327).
[6] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[7] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).
[8] *Id.*

the complaint are true, even if doubtful.[9]  The Supreme Court clarified the standard for a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is *plausible* on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[10]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[11]  "Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim."[12]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[13]  The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[14]  When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[15]

---

[9] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[10] *Bell Atl.*, 550 U.S. at 555, 570.
[11] *Iqbal,* 556 U.S. at 678.
[12] *Roy v. Cobb*, No. 20-0167, 2020 WL 2045791, at *2 (W.D. La. April 7, 2020) (citing *Bell Atl.*, 550 U.S. at 556).
[13] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted); *see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944–45 (5th Cir. 2018) (holding conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).
[14] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (stating that a court may rely on the complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).
[15] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[16] If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[17] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[18]

A prisoner's *in forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1). When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[19] A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[20] The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[21] The court must also "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'"[22]

---

[16] *See also Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).
[17] *Id.*.
[18] *Id.*
[19] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (citation omitted) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").
[20] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).
[21] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).
[22] *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

### B. The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[23] The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[24] "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[25] The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e).[26] "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[27]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[28] "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[29] Medical records of sick calls, examinations, diagnoses, and medications may, however, rebut allegations of deliberate indifference.[30]

---

[23] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).
[24] *Id.*
[25] *Davis v. Scott*, 157 F.3d 1003, 1005–06 (1998).
[26] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82; *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990) (citation omitted).
[27] *Spears*, 766 F.2d at 182.
[28] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).
[29] *Id.* (citing *Wilson*, 926 F.2d at 482; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).
[30] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

After a *Spears* hearing and its concurrent opportunity to expound the claim, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[31] or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."[32]

### III. LAW AND ANALYSIS

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[33]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[34] Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability under § 1983."[35] A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law,

(2) that occurred under color of state law, and

(3) was caused by a state actor.[36]

---

[31] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).
[32] *Moore*, 976 F.2d at 270. This framework "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).
[33] 42 U.S.C. § 1983.
[34] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted)
[35] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[36] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted) (stating § 1983 imposes liability for violations of rights protected by the Constitution and not for violations of duties of care arising out of tort law).

In this case, even under the broadest reading of his claims,[37] Plaintiff's claims against Jefferson Parish Sheriff's Department, as expounded by his § 1983 Response and *Spears* testimony, should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2) and/or 42 U.S.C. § 1997e(c)(1) on the basis that the defendant is neither a § 1983 person nor suable under § 1983 and that Plaintiff's claim against Officer Duffourc for failure to investigate or properly document his investigation be dismissed with prejudice under 28 U.S.C. § 1915(e)(2) and/or 42 U.S.C. § 1997e(c)(1) on the basis that § 1983 liability does not exist for alleged failure to investigate. Additional claims against Officer Duffourc, as well as Officer Scott and unidentified Officer, must be dismissed for lack of sufficient factual allegations. Plaintiff's claims against Deputy Lisgo for excessive force premised on his allegations of being fired upon as he existed the vehicle should remain, but that claim must be stayed pending the resolution of Plaintiff's underlying criminal proceedings.

### A. Claims Against JPSO

To recover under § 1983, the plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.[38] Gilds names the Jefferson Parish Sheriff's Office as the only defendant this case. "However, a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action."[39] The State of Louisiana grants no such

---

[37] The court must "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . ." *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011), (internal quotations and citation omitted); *Moore*, 30 F.3d at 620 (citation omitted).
[38] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978) (stating the respondents are first bound to show that they have been deprived of a constitutional right and that the individual, i.e. the Flagg Brothers, deprived them of this right).
[39] *Francis v. Terrebonne Par. Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Par. Council-Pres. Govt.*, 279 F.3d 273, 283 (5th Cir. 2002); *Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Fitch v. Terrebonne Par. Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006); *Martinez v. Larpenter*, No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); *Causey v. Par. of Tangipahoa*, 167 F.Supp.2d 898, 904 (E.D. La. 2001); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988)); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing LA. REV. STAT. ANN. § 33:361).).

legal status to any law enforcement office or department.[40]  Further, the Sheriff's Office is not a "person" for purposes of § 1983 liability.[41]

Because the Jefferson Parish Sheriff's Office is not a person or suable entity to be held liable under § 1983, Plaintiff's claims against it must be dismissed as frivolous, and otherwise for failure to state a claim upon which relief can be granted.

### B.  Claims Against JPSO Officers

Although Plaintiff's Complaint does not name any individual officers whom he contends violated his constitutional rights, in response to this Court's § 1983 Facts Order (ECF No. 7), Plaintiff lists four officers as individuals whom he alleges violated his constitutional rights.  ECF No. 8, ¶ 1 at 1.

#### 1.  Claims Against Officer Scott, Officer Duffourc and Unidentified Officer #115456

Although Plaintiff also identified Officer Bradley Scott, Officer Brian Duffourc and an unidentified Officer #115456 in his § 1983 Response (ECF No. 8, ¶ 1, at 1; *see also* ECF No. 7), he does not identify any alleged facts supporting his conclusory assertion that these officers violated his constitutional rights.  At most, Plaintiff alleges that Officer Duffourc failed to properly document the interaction or investigate the crime scene.  ECF No. 8, ¶¶ 12, 19-20, at 4, 5.  The failure to investigate an offense does not give rise to § 1983 liability.[42]

During the *Spears* conference, Plaintiff confirmed that he is not accusing these officers of excessive force, they were not involved in his arrest, and they were named only because their names were on the police report.  Plaintiff's failure to set forth any facts to suggest that these

---

[40] *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't*, 350 So. 2d 236, 238 (La. App. 3d Cir. 1977).
[41] *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003) (citation omitted); *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, *1 (E.D. La. Jan. 22, 1993) (citation omitted).
[42] *Rolen v. City of Brownfield,* 182 F. App'x 362, 364 (5th Cir. 2006) ("Failure to investigate or prosecute an offense does not give rise to § 1983 liability.") (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)).

11

officers were personally involved in any constitutional violation precludes his effort to state a claim against them.

## 2. Claims Against Deputy Lisgo

Although Plaintiff's Complaint does not formally name Officer Lisgo as a defendant, his complaint raises an excessive force claim and his fact statement and *Spears* testimony expounds on that claim by asserting that JPSO Officer Lisgo used excessive force when he began to fire his weapon as soon as Plaintiff exited the vehicle, in violation of his constitutional rights. (ECF No. 4-1, ¶ IV, at 5; No. 8, at 1, 6–7).

Where a plaintiff alleges excessive force during an arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures."[43] Claims that law enforcement used deadly force are "treated as a special subset of excessive force claims."[44] The reasonableness of the use of force requires consideration of the facts surrounding the arrest based on the following three factors: (1) "the severity of the crime at issue," (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and (3) "whether he [was] actively resisting arrest or attempting to evade arrest by flight."[45] "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors]."[46] "A court . . . cannot apply this standard mechanically," but must look through the eyes of a reasonable officer on the scene.[47]

---

[43] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted).
[44] *Aguirre v. City of San Antonio*, 995 F.3d 395, 412 (5th Cir. 2021) (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998)).
[45] *Timpa v. Dillard*, 20 F.4th 1020, 1029 (5th Cir. 2021) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989))..
[46] *Cooper v. Brown*, 844 F.3d 517, 524–25 (5th Cir. 2016) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).
[47] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[O]bjective reasonableness [of use of force] turns on the 'facts and circumstances of each particular case' [and] the court must make this determination from the perspective of a reasonable officer on the scene . . . .").

The reasonableness of the use of deadly force inquiry is analyzed "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[48] An officer cannot resort to deadly force unless they have "probable cause . . . to believe that the suspect [has committed a felony and] poses a threat to the safety of the officers or a danger to the community if left at large."[49] Thus, the reasonableness of deadly force requires a two-prong analysis. First, whether the force used constituted deadly force; and second, whether the subject posed a threat of serious harm justifying the use of deadly force.[50] "[W]hether a particular use of force is 'deadly force' is a question of fact, not one of law."[51] The question is whether the use of force "carr[ied] with it a substantial risk of causing death or serious bodily harm."[52] Officers can use deadly force unless "it was clearly established that the Fourth Amendment prohibited the officer's conduct in the 'situation confronted.'"[53]

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'"[54] "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

---

[48] *Graham*, 490 U.S. at 396–97.
[49] *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).
[50] *See Gutierrez*, 139 F.3d at 446 (citing *Tennessee*, 471 U.S. at 11) (stating guns represent the "paradigmatic" example of deadly force)).
[51] *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (citation omitted).
[52] *Gutierrez*, 139 F.3d at 446 (quoting *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988)).
[53] *Mullenix v. Luna*, 577 U.S. 7, 13-14 (2015).
[54] *Bush*, 513 F.3d at 497 (quoting *Heck*, 512 U.S. at 486-87).

proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."[55] Therefore, *Heck* applies to a prisoner's claims, whether he seeks monetary, injunctive, or declaratory relief.[56]

"Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring [the court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction."[57] Therefore, the court should determine whether the plaintiff's excessive force claim is "conceptually different from his conviction . . . such that 'a successful suit on the former would not necessarily imply the invalidity of the latter.'"[58]

The Supreme Court applied a modified version of *Heck* to pretrial detainees in *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). In *Wallace*, the Court explained that, if a pretrial detainee files civil rights claims related to the validity of a pending criminal proceeding, the best practice is for the district court to stay the civil rights action until the pending criminal case is resolved to determine the impact of the *Heck* limitations.[59] The court in *Wallace* explained:

---

[55] *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).
[56] *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending *Heck* to bar a prisoner's claim for money damages and declaratory relief challenging disciplinary hearing procedures); *VanBuren v. Walker*, 841 F. App'x 715, 716 (5th Cir. 2021) (recognizing the *Heck* bar to "any injunctive relief" tied to petitioner's habeas claim brought under § 1983); *Ellis v. City of Dallas*, No. 17-3199, 2018 WL 5303299, at *2 (N.D. Tex. Sept. 21, 2018), *R&R adopted*, 2018 WL 5299575, at *1–2 (N.D. Tex. Oct. 25, 2018) ("*Heck* applies to claims seeking declaratory and injunctive relief, as well as claims for damages.").
[57] Bush, 513 F.3d at 497.
[58] *Ballard v. Burton*, 444 F.3d 391, 400 (5th Cir. 2006) (citation omitted); *see*, *e.g.*, *Arnold v. Town of Slaughter*, 100 F. App'x 321, 324 (5th Cir. 2003) (although plaintiff claimed in his § 1983 excessive force suit that he did nothing wrong or did not provoke officers and was viciously attacked for no reason, his suit was barred by *Heck* because it "squarely challenge[d] the factual determination that underlie[d] his conviction for resisting an officer."); *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008) (same); *Walter v. Horseshoe Ent.*, 483 F. App'x 884, 887 (5th Cir. 2012) (same, finding plaintiffs' suit was an attack on their convictions barred by *Heck* because their "convictions for resisting arrest and their claim of use of excessive force stem[med] from a single interaction [although they] argue[d] that they did not resist arrest... and that the force used against them was therefore excessive.").
[59] *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see Mackey v. Dickson*, 47 F. 3d 744, 746 (5th Cir. 1995) (finding stay of pretrial § 1983 challenges to be the best practice).

14

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.[60]

To the extent Gilds asserts a claim in connection with the circumstances surrounding his apprehension and arrest or alleges insufficient evidence or inappropriate investigation of charges against Deputy Lisgo, those claims necessarily relate to the propriety of his ongoing criminal proceeding. In addition, Deputy Lisgo's alleged use of force by firing his weapon at Plaintiff may involve evaluation of the facts surrounding Plaintiff's flight, arrest, and the pending charge of flight from an officer. As a result, the claims are subject to the *Heck* doctrine and should be stayed pursuant to *Wallace* until resolution of Gilds' underlying criminal proceeding. Only at that time will the court be able to assess the application of the *Heck* bar. Therefore, Gilds' complaint for excessive force against Deputy Lisgo cannot proceed at this time.

### IV. **CONCLUSION**

Plaintiff's claim against the Jefferson Parish Sheriff's Office fails because the sheriff's office is neither a legal entity capable of being sued in a federal civil rights action nor a "person" for purposes of § 1983 liability. Treating Plaintiff's § 1983 Response and Spears hearing testimony as an amendment to his Complaint, Plaintiff fails to state a claim against Officer Bradley Scott, Officer Brian Duffourc and an unidentified Officer #115456. Plaintiff's claim of excessive force based on being fired upon as he exited his vehicle by Deputy Lisgo should remain. That claim, however, must be stayed under *Heck* and *Wallace* until after the conclusion of Plaintiff's underlying criminal proceedings.

---

[60] *Wallace*, 549 U.S. at 393-94 (citations omitted).

## V. RECOMMENDATIONS

For the foregoing reasons,

**IT IS RECOMMENDED** that plaintiff's claims against the Jefferson Parish Sheriff's Department be **DISMISSED WITH PREJUDICE** as legally frivolous under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Officer Duffourc, Officer Bradley Scott, and unidentified Officer #115456 based on alleged failure to investigate or properly document their investigation be **DISMISSED WITH PREJUDICE** as legally frivolous under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that Plaintiff's excessive force claim of Fourth Amendment violation against Deputy Lisgo based on allegedly being fired upon immediately upon exiting his vehicle continue as the only remaining claim further proceedings.

**IT IS FURTHER RECOMMENDED** that Plaintiff's only remaining claim of excessive force against Deputy Lisgo be **STAYED** pending resolution of Plaintiff's underlying criminal proceeding.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[61]

New Orleans, Louisiana, this 17th day of June, 2022.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[61] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).